UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KENNETH P. DESCOTEAUX,<br><br>        Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Respondent. | CASE NO. 18-cv-5325BHS<br><br>(16-cr-5246BHS & 17-cr-5074BHS)<br><br>ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE IN PART, GRANTING EVIDENTIARY HEARING AND RESERVING RULING IN PART, AND APPOINTING COUNSEL |

This matter comes before the Court on Plaintiff Kenneth Descoteaux's

("Descoteaux") motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255.

Dkt. 1. The Court has considered the pleadings filed in support of and in opposition to the

motion and the remainder of the files and hereby denies the motion in part, grants an

evidentiary hearing reserving ruling on the merits in part, and appoints counsel for

Descoteaux for the reasons stated herein.

## I.    FACTUAL & PROCEDURAL HISTORY

### A.    Factual Background

On April 28, 2016, Descoteaux was charged by complaint in the Western District

of Washington with one count of aggravated sexual abuse of a minor. *United States v.*

*Descoteaux*, No. 16-cr-5246-BHS ("2016 Case"), Dkt. 1. He was arrested in Wyoming

the same day. *Id.*, Dkt. 4. On May 25, 2016, Descoteaux was charged by indictment in

this district with three counts of aggravated sexual abuse of a minor, abusive sexual contact with a minor, and assault. *Id.*, Dkt. 6.

On June 9, 2016, Descoteaux was also indicted by a grand jury sitting in the Western District of Louisiana, Lake Charles Division. *See United States v. Descoteaux*, No. 16-cr-0141-PM-KK. The Louisiana indictment charged Descoteaux with two counts of aggravated sexual abuse of a minor, two counts of indecent behavior with a juvenile, and assault. *Id.*

### 1.  Allegations and Investigation

The charges in each indictment were based on allegations that Descoteaux subjected his minor stepdaughter ("MV") to repeated acts of sexual abuse occurring between 2011 and 2015 in Louisiana and Washington. 2016 Case, Dkt. 1. During this period, Descoteaux was married to MV's mother, Jayme Howard ("Howard"), and the family lived at Fort Polk in Louisiana and at Joint Base Lewis-McChord in Washington. *Id.*, Dkt. 43. From 2014 to 2015, Howard was deployed overseas, leaving MV alone with Descoteaux as her sole caretaker. *Id.*, Dkt. 1. By 2016, the family had moved to Cheyenne, Wyoming.

In February 2016, a social worker at MV's elementary school contacted law enforcement after MV told a classmate about the abuse. *Id.* An investigation ensued, and in mid-February MV "disclosed to the [child forensic interviewer]" that Descoteaux "had sexually abused her over a period of 3 years . . . and that the abuse started when she was 8-years-old." *Id.*, ¶ 9.

Investigators interviewed Descoteaux several times. Initially, he denied having any sexual contact with MV when questioned by law enforcement but in a later interview told police that it was possible sexual contact had occurred if MV had initiated that contact while he was extremely intoxicated. *Id.*, ¶¶ 7, 15–17 ("I'm not denying it happened, I'm admitting that if she's saying this, then I'm guilty.").

On April 22, 2016, Descoteaux was interviewed again.[1] *Id.*, ¶ 18. Although the record contains only scant documentation of the conditions of that interview, the complaint provides that after receiving a warning pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), Descoteaux "freely and voluntarily" waived his rights. 2016 Case, Dkt. 1, ¶ 18. He then provided a statement to a FBI agent acknowledging "that he engaged in 65 instances of sexual acts with [MV] while they were living in Louisiana and Washington." *Id.* After he confessed, the FBI agent allowed Descoteaux to leave. He was arrested six days later on April 28, 2016, *id.*, Dkt. 4 at 7,[2] the same day that prosecutors filed a complaint against him in this District, *id.*, Dkt. 1.

After his arrest, Descoteaux contacted Howard from a recorded phone line. One conversation was as follows:

MS. HOWARD: Why'd you do this to us, Ken?

MR. DESCOTEAUX: I don't know. I mean, like at the time, **when it was happening, I knew it was wrong.** But at the same time, it was like -- I knew it was wrong, but it was like (Inaudible). So it felt wrong, but it just didn't feel that wrong, you know.

---

[1] As explained below, the motion disputes the factual circumstances of the interview and the voluntary nature of the confession. *See* Dkt. 1 at 7–9.

[2] The Court refers to the pagination generated by the CM/ECF system throughout.

MS. HOWARD: Yeah.

MR. DESCOTEAUX: So it's like, oh, yeah, hey. **She -- she wants it; she likes it, too.** Okay. You know what I mean? It's one of those things where -- just poor judgment, lack of -- you know, [MV] really did give me all the love and attention that I craved in our marriage. **What you didn't give me, [MV] gave me. And that's -- you know, I know it's wrong.**

*Id.*, Dkt. 14-3 at 8–9. In another conversation with his mother, Linda Morin[3] ("Morin"), Descoteaux acknowledged abusing MV as follows:

MR. DESCOTEAUX: . . . [Howard] was . . . you know, she would ignore me and stuff like that. [MV] is -- I'm not saying it's her fault. **But [MV] is the one that actually came on me to me** and stuff like that. **So I should have known better, but that's what happened, so.**

MS. MORIN: Yes, you should have known better.

MR. DESCOTEAUX: **Yep, I'm not -- but anyway, so that's what happened. And, um, I was honest with Jayme about it. And [MV] forgiven me.** And we've talked about it. **And she's not like a bit -- least bit disturbed, or you know, damaged at all**, you know. So -- and we've –

MS. MORIN: Oh.

MR. DESCOTEAUX: -- all talked about it. **And – and things were going straight. And then, you know – and that's when the -- the government got involved.** And you know how the government screws everything up in my life. So that's what they're doing now.

*Id.* at 12.[4]

The District of Wyoming issued an order prohibiting Descoteaux from contacting

MV and Howard in May 2016. *Id.*, Dkt. 22, Ex. A. This Court appointed Assistant

---

[3] *See* Dkt. 16 at 2.

[4] The Court reproduces this transcript and all others as they appear in the original including typographical errors. *See* 2016 Case, Dkt. 14-3.

Federal Public Defender Linda Sullivan ("Sullivan") to represent Descoteaux on the charges pending in the Washington indictment. *Id.*, Dkt. 11.

### 2. Sullivan's Role in Plea Negotiations[5]

Sullivan began negotiating a plea agreement on Descoteaux's behalf. By January 2017, the parties had reached an agreement to transfer the Louisiana indictment to this district pursuant to Fed. R. Crim. P. 20 in anticipation of a joint resolution of the charges then pending in two districts. 2016 Case, Dkt. 27. In February 2017 the Louisiana charges were transferred to this District and opened in a new case as *United States v. Descoteaux*, No. 17-cr-5074-BHS ("2017 Case").

Less than a month after transfer of the Louisiana indictment, Sullivan moved to withdraw as Descoteaux's attorney "due to a breakdown in the attorney-client relationship." 2016 Case, Dkts. 30, 31. In February 2017, the Court granted the motion and terminated Sullivan's representation. *Id.*, Dkt. 34.

### 3. Hester's Role in Plea Negotiations

On March 3, 2017, the Court appointed attorney Lance Hester ("Hester") to represent Descoteaux. *Id.*, Dkt. 36. Descoteaux alleges that Hester advised him that he was bound by Sullivan's plea negotiations. Dkt. 1 at 13. The Government asserts that Hester's plea agreement was "similar to [Sullivan's agreement] in nearly all respects."

---

[5] The Government argues that any claim that Sullivan was ineffective is foreclosed by Descoteaux's later entry into a plea agreement negotiated by Hester. Dkt. 7 at 16. However, Descoteaux asserts that Hester ineffectively induced his plea by telling him he was bound by the earlier agreement that Sullivan had negotiated. Therefore, the Court briefly recounts the facts of Sullivan's representation and Descoteaux's claims based on her plea-stage advice.

Dkt. 7. Ultimately, Hester negotiated a plea agreement that allowed Descoteaux to plead guilty to one count from each indictment, specifically, abusive sexual contact with a child in violation of 18 U.S.C. §§ 2244(a)(5), 2246(3), and 7 (count 4 of the Washington indictment) and indecent behavior with a juvenile in violation of 18 U.S.C. §§ 7 and 13, and Louisiana Revised Statute §§ 14.81(A)(1) and (H)(2) (count 3 of the Louisiana indictment) (collectively, the "charged offenses"). 2016 Case, Dkt. 43, ¶ 1. In exchange, the Government agreed to dismiss the remaining counts from both indictments. *Id.*

The parties stipulated to the factual basis for the plea agreement. *Id.*, ¶ 6. Within the stipulated statement of facts, Descoteaux admitted to multiple acts of sexual abuse against MV. *Id.* Descoteaux further forfeited his right to appeal and to collaterally attack the conviction, "except as it may relate to the effectiveness of legal representation." *Id.* at 11–12.

### 4.     Change of Plea Hearing

On April 27, 2017, Descoteaux pled guilty to both charges under the terms of Hester's plea agreement. 2016 Case, Dkt. 42; 2017 Case, Dkt. 9. The undersigned presided over the hearing and conducted a plea colloquy pursuant to Rule 11 of the Federal Rules of Criminal Procedure ("Rule 11"). 2016 Case, Dkt. 42; 2017 Case, Dkt. 9. The Court placed Descoteaux under oath for the hearing. Dkt. 7-1 at 7. The prosecutor read the elements and penalties of each offense aloud into the record. *Id.* at 9–12. The Court then inquired as follows:

> THE COURT: . . .  Now, Mr. Descoteaux, **do you have any questions about what the charges are** that are set out in the plea agreement that you

are intending to plead guilty to **or what the elements of those charges are** or what the penalties are that can be imposed here?

THE DEFENDANT: **No questions, Your Honor.**

*Id.* at 12. The prosecutor then read the detailed stipulated offense conduct facts into the record. *Id.* at 13–16. The Court then inquired as follows:

THE COURT: All right. Mr. Descoteaux, first I will note in the original plea agreement on page 5, line 20, there was a partial deletion there and the date of that deletion. So with that change, now, you've been through, you've read through this statement of facts and you've heard them re-read here, I think almost verbatim; **are these facts true and accurate?**

THE DEFENDANT: **Yes, Your Honor.**

*Id.* at 16. Descoteaux later affirmed under oath that he was guilty of the charged offenses. *Id.* at 24. The Court found that Descoteaux "fully underst[ood] this plea agreement and all the rights that are set out in this plea agreement that we've gone over this morning." *Id.* at 25. The Court also found "a factual basis for each of the elements of the two charges that you have pled guilty to . . ." *Id.* The Court further concluded that Descoteaux's plea of guilty was knowing, intelligent, and voluntary. *Id.*

### 5.    Sentencing Hearing

On September 5, 2017, the Court held a sentencing hearing and determined that Descoteaux's net offense level was 39 and that his criminal history category was I. Based on these findings, Descoteaux faced a guideline sentencing range of 262 to 327 months. Dkt. 7-1 at 34; *see also* United States Sentencing Commission, *Guidelines Manual*, Ch. 5, Part A (Nov. 2016) (showing sentencing guideline for offender with net offense level of

39 and criminal history category of I). Pursuant to the plea agreement, both parties requested a sentence of 276 months. Dkt. 7-1 at 35, 42.

During its presentation, the Government read the confession Descoteaux provided to the FBI into the record in its entirety. Dkt. 7-1 at 35–38. During Hester's presentation, Descoteaux exercised his right of allocution and took full responsibility for the charged offenses in open court. *Id.* at 44–47 ("Honorable Settle, I have committed terrible acts on someone whom I love. . . . My intentions were never to cause any harm, but that does not diminish the severity of my actions, nor soften the pain that was inflicted upon a sweet child that deserved none of the horrors endured."). Descoteaux also wrote a letter of acceptance of responsibility that was filed with the Court before sentencing. Dkt. 46 at 17. The letter begins: "I have pleaded guilty because I am guilty." *Id.*

Applying the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court found that "nearly every one of the factors point to the high end of the guideline range [of 327 months]." *Id.* at 48. However, the Court ultimately adopted the parties' recommendation and sentenced Descoteaux to 276 months to run concurrently on each charge. 2016 Case, Dkt. 57; 2017 Case, Dkt. 26. The Court advised Descoteaux that he "gave up [his] right to appeal this judgment based on [his] plea of guilty." Dkt. 7-1 at 57. The Court also advised that he had waived his right to appeal the sentence because the Court had imposed a sentencing within the guideline range. *Id.*

Descoteaux did not challenge his conviction on direct appeal. Dkt. 1 at 1.

On April 23, 2018, Descoteaux filed the instant motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. 1. On April 30, 2018, the Court

ordered the Government to file an answer. Dkt. 3. On July 27, 2018, the Government

answered, arguing that Descoteaux had pled guilty voluntarily with the benefit of

effective counsel. Dkt 7. On December 6, 2018, Descoteaux replied. Dkt. 14. On

September 4, 2019, Descoteaux moved to expand the record with a declaration from his

stepmother. Dkt. 15. On September 26, 2019, the Government responded and filed a

cross motion to expand the record to include the complete transcript of the recorded

telephone call between Descoteaux and Morin. Dkt. 16. On October 10th, 2019,

Descoteaux replied. Dkt. 17.

**B.      Section 2255 Motion**

Descoteaux asserts a claim for ineffective assistance of counsel under three legal

theories (grounds one, three, and four) and a claim that the Court failed to find a factual

basis to enter judgment on the plea (ground two). Dkt. 1. Both claims, however, are based

on the same two core factual assertions: first, that despite Descoteaux's repeated, direct,

and widespread admissions of guilt, he is innocent of the extensive sexual abuse that his

conviction is based on, and second, that the statement he gave to the FBI resulted from

obvious coercion. *See* Dkt. 1 at 5 ("[Descoteaux] was not advised, nor did he know, that

an unsubstantiated claim by a troubled child, without a factual basis, was insufficient to

permit a conviction based solely on a coerced confession."). Descoteaux also contends

that his stepmother's declaration supports his claims of constitutional error and actual

innocence. Dkt. 15 at 2. Because Descoteaux is proceeding pro se, the Court construes

the motion's four grounds for relief liberally as set forth below. *Estelle v. Gamble*, 429

U.S. 97, 106 (1976) (stating that a pro se document should be liberally construed).

### 1.  Ground One

In ground one, Descoteaux asserts that his conviction should be set aside "because he entered into a plea agreement unintelligently, unknowingly, and involuntarily" due to ineffective assistance of counsel. Dkt. 1 at 4. As a factual basis for this ground,[6] he asserts that an FBI agent elicited his statement confessing to the abuse of MV "under threat of being shot." *Id.* Specifically, Descoteaux contends that when he appeared at a FBI field office for a voluntary polygraph test prior to his arrest, an FBI agent obtained his written consent to conduct the test but then "locked the door, and began yelling." *Id.* at 8. He further alleges that after locking the door, the FBI agent, named Stearns, "repeatedly brandished his weapon," causing him to believe that "he was in danger of being shot." *Id.* He also asserts that Agent Stearns would not let him "leave the room until he wrote a confession." *Id.* Only after Descoteaux "wrote the statement the way [A]gent Stearns demanded, just the way the agent coached him to write it," did Agent Stearns "unlock[] the door" and allow him to leave. *Id.* at 9.

In this context, Descoteaux alleges that Hester performed deficiently because he advised Descoteaux that "the facts" of the FBI's alleged use of force "didn't matter" and that he "could either take the plea agreement or die in prison." *Id.* Thus, the thrust of this claim is that Hester either failed to recognize the significance of the coercion as a basis to suppress the confession or failed to recommend suppression, and as a result, Descoteaux

---

[6] The Court construes the "supporting facts" listed for each individual ground, Dkt. 1 at 4–17, to apply broadly across the four grounds in the motion. *Estelle*, 429 U.S. at 106.

"did not understand the options available to him at the time of the guilty plea, nor was he aware of the consequences of the choices he was presented." *Id.*

### 2. Ground Two

In ground two, Descoteaux claims that the Court "failed to find a factual basis to support the guilty plea." *Id.* at 7. The factual basis Descoteaux provides for this ground is an assertion that he "could not and did not admit to a single fact concerning his guilt at the change of plea hearing, depending completely on the coerced statement ilicited [sic] by the FBI." *Id.*

### 3. Ground Three

In ground three, which the Court finds substantially overlaps with ground one, Descoteaux alleges that Sullivan and Hester inaccurately advised him during the plea stage of this case, which "not only caused [him] to plead guilty unintelligently, but also deprived [him of] the effective assistance of counsel." *Id.* at 11–14.

Regarding the factual basis for Sullivan's plea stage advice, Descoteaux asserts that he "informed [Sullivan] that he had been coerced into making a statement" and "requested that she file a motion to suppress," but Sullivan refused to file the motion. *Id.* at 12. Descoteaux further states that Sullivan tricked him into signing a speedy trial waiver, causing him to remain in custody until his will was "overbourne" [sic] and he pled guilty. *Id.* Finally, Descoteaux states that Sullivan advised him that if he did not plead guilty, he would be convicted in both Washington and Louisiana, receive life sentences, and die in prison and that this advice was ineffective. *Id.* at 10.

Regarding Hester's advice at the plea stage, Descoteaux explains that Hester told him he was bound by the plea agreement that Sullivan negotiated. *Id.* at 13. Descoteaux generally contends that Hester was ineffective at the plea stage for the same reasons as Sullivan. First, he asserts that Hester also advised against an attempt to exclude the allegedly coerced confession and that this advice was ineffective. *Id.* at 13 ("Hester also advised that . . . mitigating the sentenc[ing] exposure was Mr. Descoteaux's only defense."). Second, he alleges that Hester's subsequent advice to plead guilty constituted the ineffective assistance of counsel, rendering the plea involuntary. This is so, Descoteaux asserts, because of Hester's failure to competently assess the suppression issue in light of Descoteaux's actual innocence, which Descoteaux alleges he maintained to Hester. *Id.* at 11 ("counsel advised Mr. Descoteaux that "because of the coerced statement it didn't matter that the initial allegation was untrue."). Thus, according to the motion, Descoteaux made Hester aware that both MV's allegations and his statement to the FBI were false, yet Hester advised him his innocence did not matter because of the false confession. *Id.*

Finally, and although these events did not occur at the plea stage, Descoteaux asserts that Hester was ineffective in advising him to take responsibility for the crimes at sentencing by (1) writing a letter to the court that demonstrated remorse and (2) not objecting to the offense conduct facts as detailed in the presentence report. *See id.* at 13 ("Mr. Descoteaux was once again directed to write a confession to avoid dying in prison. This time Mr. Hester advised Mr. Descoteaux to write a letter to the judge taking responsibility for the crime he was innocent of.").

### 4.     Ground Four

In ground four, Descoteaux contends that he was denied counsel after sentencing, a critical stage in the proceedings. *Id.* at 16. The factual basis for this ground is Descoteaux's assertion that Hester deprived him of any "meaningful advice" after sentencing occurred. *Id.*

## II.     DISCUSSION

### A.     Standards of Review

#### 1.     28 U.S.C. § 2255

Under § 2255, the Court may grant relief to a federal prisoner who challenges the imposition or length of his incarceration on the ground that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

An inmate filing a claim for federal habeas relief is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b). The Ninth Circuit has characterized this standard as requiring an evidentiary hearing when "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (citing *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir. 1984)).

## 2.   Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court evaluates ineffective assistance of counsel claims under the two-prong test set forth in *Strickland.* To prevail under *Strickland*, a defendant must prove (1) that his counsel's performance was deficient and (2) that this deficient performance was prejudicial. *Id.* The Court must apply a "strong presumption that counsel's conduct falls within the "wide range of reasonable professional assistance." *Id.* at 689.

In *Hill v. Lockhart*, the Supreme Court confirmed that the *Strickland* test governs challenges to guilty pleas based on the ineffective assistance of counsel. 474 U.S. 52, 58–59 (1985). A defendant who pleads guilty upon the advice of counsel may only attack the voluntary nature of the guilty plea by showing that the advice he received from counsel to enter the plea was ineffective. *Id.* at 56–57 (citing *Tollet v. Henderson*, 411 U.S. 258, 267 (1973)). An attorney's advice to enter a plea is ineffective if it falls below '"the range of competence demanded of attorneys in criminal cases."' *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). With respect to *Strickland's* prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* at 59 (footnote omitted). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

**B.      Application to § 2255 Petition**

As explained below, the Court grants an evidentiary hearing and reserves ruling on the merits of ground one and ground three because those grounds rely on factual allegations that are unresolved by the current record. The Court further concludes that ground two and ground four are meritless. Therefore, the Court denies ground two and ground four.

**1.      Ground One and Ground Three**

Descoteaux's ineffective assistance claims in ground one and ground three arise out of Hester's advice at the plea stage. Dkt. 1 at 4–5, 11–14. A defendant has the right to effective assistance of counsel during plea bargain negotiations. *Missouri v. Frye*, 566 U.S. 134, 144–145 (2012) (quoting *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010)). Counsel who misadvises a defendant about the law or who improperly coerces a defendant to accept a plea bargain may be found deficient. *See Lafler v. Cooper*, 566 U.S. 156, 168 (2012) ("If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it."). The Government contends that Descoteaux's claims can be divided into three categories as follows: "(1) those that challenge the voluntariness of Descoteaux's plea, and accordingly, his waiver of his right to appeal and seek collateral relief, (2) his claims relating to ineffective assistance of counsel, and (3) those remaining allegations that are without merit due to his knowing and voluntary waiver." *Id.* at 12. Following this division of claims, the Government addresses the voluntary nature of the plea separately from the confession and effectiveness of representation issues. *Id.* at 12–21. Under the prevailing standards set

forth above, however, these issues must be analyzed together. In other words, because the Court is considering a § 2255 motion challenging a guilty plea based on the ineffective assistance of counsel, whether Descoteaux pled guilty voluntarily—and thus, whether the waiver provision in the plea agreement validly forecloses consideration of the suppression issue—depends on whether Hester's advice to enter the plea was competent. *Hill*, 474 U.S. at 56 (citing *McMann*, 397 U.S. at 771).

With this relationship of issues in mind, the Court turns to the motion. The Government construes grounds one and three too narrowly when it summarizes Descoteaux's argument as "his plea and waiver were somehow involuntary because he was facing a potential life sentence." Dkt. 7 at 15. Instead, the motion asserts that Descoteaux's plea was involuntary because Hester misadvised him regarding the viability of suppression and whether to accept the plea after allegedly being aware of (1) the conditions of the confession (as alleged in the motion) and (2) Descoteaux's claims of actual innocence. Dkt. 1 at 4–5, 11, 13–14. As a result, Hester's advice about suppressing the confession allegedly obtained at gunpoint bears directly on analysis of the competency of his advice to enter the plea.

District courts may dismiss a § 2255 motion without a hearing when the petitioner's allegations, *when viewed against the court's record*, either do not give rise to a claim for relief or are "palpably incredible or patently frivolous." *Schaflander,* 743 F.2d at 717 (citing *Blackledge v. Allison*, 431 U.S. 63, 76 (1977); *Baumann v. United States*, 692 F.2d 565, 571, 581 (9th Cir. 1982)). Normally, a claim that seasoned counsel failed to recognize the constitutional significance of a law enforcement agent having dictated

his client's confession at gunpoint would be "palpably incredible or patently frivolous." *Id*. However, Descoteaux's claims here rely on his factual allegations about the confession and Hester's subsequent advice, circumstances which are entirely outside of the Court's record and which he claims impacted his decision to plead guilty. Dkts. 1, 14. Moreover, Descoteaux attributes error (based on Hester's alleged incompetence regarding whether to enter the plea) to evidence in the record establishing his guilt, including his admissions during the change of plea hearing and at sentencing. *See* Dkt. 1 at 4, 5, 11–14. Ultimately, the Court relies on the specific facts alleged by Descoteaux in the motion in concluding that a claim that counsel failed to recognize the viability of suppressing a confession obtained at gunpoint given the client's contemporaneous assertions of innocence states a prima facie case of incompetent performance under *Strickland*.

When a defendant who has pled guilty is asserting ineffective assistance of counsel, *Strickland's* prejudice requirement focuses on whether the defendant would have proceeded to trial but for counsel's errors. *Hill*, 474 U.S. at 59. The Government argues that Descoteaux fails to demonstrate prejudice even if Hester had successfully suppressed the confession in light of the other inculpatory evidence the record contains.[7] Dkt. 7 at 18. In response, Descoteaux maintains that he would have proceeded to trial but for

---

[7] The Government also argues that Descoteaux cannot show prejudice because Hester's plea agreement purportedly reduced the term of incarceration by two years in comparison to Sullivan's agreement. Dkt. 7 at 17–18 (citing *Sam v. United States*, No. CR-12-08176-PCT-JAT, 2015 WL 9897779, at *8 (D. Ariz. Dec. 2, 2015), *report and recommendation adopted sub nom. Sam v. United States*, No. CR-12-8176-PCT-JAT, 2016 WL 245460 (D. Ariz. Jan. 21, 2016)). The record, however, contains no indication of the contents of any plea agreement negotiated by Sullivan. Therefore, the Court is unable to evaluate prejudice or lack thereof on this basis.

Hester's allegedly ineffective advice regarding the viability of suppression, Dkt. 14 at 2, and challenges the Government's assertion that statements he made at the plea hearing and/or sentencing conclusively resolve his claims in light of the alleged extra-record circumstances of the confession, *id.* at 3 (citing *Machibroda v. United States*, 368 U.S. 487, 494–96 (1962) (an evidentiary hearing is required "where the issues raised . . . . relate[] primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light.")).

At trial Descoteaux faced the prospect of a sentence much longer than the 276 months contemplated by the plea agreement. For example, the maximum penalty on the abusive sexual contact charge alone was life in prison. 2016 Case, Dkt. 43, ¶ 4. Moreover, following a conviction at trial the Government would have been free to argue that any sentence imposed should run consecutively. Therefore, the Court agrees that to establish a lack of prejudice the Government need only demonstrate that the record contains evidence sufficient to establish Descoteaux's commission of the elements of the charged offenses.

The elements of the offense of abusive sexual contact of a child are as follows:

*First*, the Defendant knowingly engaged in sexual contact with a child;

*Second*, at the time, the child was under the age of twelve years; and

*Third*, the offense was committed within the special maritime and territorial jurisdiction of the United States. *Id.*, ¶ 3.

The elements of the offense of indecent behavior with a juvenile are as follows:

*First*, the Defendant was over the age of seventeen (17) and more than two years older than the victim, who was not yet seventeen (17);

*Second*, the Defendant committed a lewd or lascivious act upon the person or in the presence of a child;

*Third*, the Defendant intended to arouse or gratify either his own or the victim's sexual desires; and

*Fourth*, the offense was committed within the special maritime and territorial jurisdiction of the United States. *Id.*

Upon review, the Court's record contains the following evidence:

(1) MV's statements recounting sexual abuse in both jurisdictions. *Id.*, Dkt. 1, ¶¶ 5, 6, 8, 9, 10, 11, 12, 13; *Id.*, Dkt. 14-1.

(2) Descoteaux's recorded admission to Howard that "when it was happening I knew it was wrong" but MV wanted "it" and liked "it" too. *Id.*, Dkt. 14-3 at 9.

(3) Descoteaux's recorded admission to Morin that MV was the one who "came on" to him, that he "should have known better, but that's what happened . . . ." and that MV has "forgiven" him and was not "damaged . . ." *Id.* at 12.

(4) Descoteaux's recorded attempts to ingratiate himself to MV and Howard after his arrest. *Id.* at 17–18.

(5) Descoteaux's handwritten confession admitting to committing at least 60 sexual acts with MV in both jurisdictions beginning when she was eight years old. *Id.*, Dkt. 14-2.

(6) The statement of facts in the plea agreement documenting numerous sexual acts with MV in both jurisdictions, which Descoteaux adopted in full while under oath. *Id.*, Dkt. 43; *see also* Dkt. 7-1 at 14–17.

(7) Descoteaux's acknowledgement of guilt at sentencing during allocution. Dkt. 7-1 at 44–48.

(8) Descoteaux's acknowledgement of guilt at sentencing through a letter of acceptance filed with the Court. 2016 Case, Dkt. 46 at 17.

Regarding items one, five, six, seven, and eight, the Court finds that each individually establish the occurrence of at least one act of sexual abuse in Washington and in Louisiana. Regarding items two and three, the recorded admissions, the Court concludes that when taken together they directly establish that Descoteaux committed at least one act of sexual abuse as discussed in further detail below. The recorded admissions are also strong circumstantial evidence corroborating a finding that multiple acts occurred in both locations because Descoteaux references an ongoing pattern of abuse. *See* Dkt. 14–3 at 9 ("When *it was happening*, I knew it was wrong.") (emphasis added).

Item four refers to another recorded phone conversation where Descoteaux lamented to MV that he would not be able to buy her ice cream and cinnamon muffins anymore due to being jailed. Dkt. 14-3 at 17–18. At sentencing, the undersigned held that this contact was inappropriate, but also rejected an enhancement for obstruction of justice based on the contact and further found that it was not uncommon for a defendant to ingratiate himself with a victim in hopes of gaining the victim's support for a plea of

leniency at sentencing. Dkt. 7-1 at 32–34. In the context of this motion, however, the Court notes that while a defendant's attempt to ingratiate himself to a child who has accused him of sexual abuse in hopes of gaining leniency at sentencing may in some cases be consistent with a theory of innocence, it is also entirely consistent with a theory of guilt, especially when viewed in conjunction with the recorded admissions. Therefore, the Court concludes that item four is circumstantial evidence that will be weighed in its analysis of whether the record contains sufficient evidence to establish Descoteaux's commission of at least one act sufficient to meet the elements of each charged offense.

Next, the Court examines the weight of each evidentiary item and whether Descoteaux attributes error to that item. Item one refers to several statements attributed to MV detailing the abuse. The complaint summarizes these statements, including MV's February 17, 2016 disclosure to a child forensic interviewer that Descoteaux had repeatedly forced her to perform sex acts while in Washington and Louisiana. 2016 Case, Dkt. 1. The verbatim transcript of MV's forensic interview also appears in the Court's record. *Id.*, Dkt. 14-1. The statements attributed to MV in the complaint and in the forensic interview transcript are hearsay, and certain statements involve multiple layers of hearsay. Although MV's report of abuse is entirely consistent with the facts known to the Court at the time of Descoteaux's plea, it is difficult for the Court to assign weight to item one in the abstract and without the ability to weigh MV's credibility.

Turning to items two and three, the Court finds Descoteaux's admissions on recorded phone lines that he knew "it" was wrong while it was happening, that MV "came on" to him, that MV wanted "it" and liked "it," that he should have known better,

but "that's what happened," that MV had "forgiven" him, that MV was not "damaged," and that "things were going straight" when the government got involved, 2016 Case, Dkt. 14-3 at 9, 12, together establish that he committed at least one act of sexual abuse against MV. Descoteaux made the admissions on phone calls occurring shortly after his arrest and before the District of Wyoming entered a no-contact order prohibiting him from communicating with Howard and MV. As noted above, the recorded admissions—which are both uncontroverted and unexplained by the facts stated in Descoteaux's motion— create a strong circumstantial inference that he committed more than one act in each jurisdiction because they reference a pattern of abuse. Similarly, the admissions also corroborate MV's report and the plea agreement facts stating that multiple acts took place in each jurisdiction. The Court will therefore consider items two and three when determining whether the record contains sufficient evidence to establish that Descoteaux committed the charged offenses.

Regarding item four, the Court determined above that Descoteaux's attempt to ingratiate himself to MV shortly after arrest by reminding her that he would no longer be able to buy her sweets is consistent with guilt but could be consistent with the theory of innocence advanced by the petition. Therefore, the Court will not consider item four.

Item five is Descoteaux's handwritten confession admitting to sexually abusing MV over 60 times in Washington and Louisiana. *Id.*, Dkt. 14-2. Descoteaux challenges his attorney's effectiveness by describing the confession as involuntary and indicates he would have gone to trial but for this error. Therefore, the Court sets the confession aside. *See Hill*, 474 U.S. at 59.

Item six refers to the statement of facts in the plea agreement, 2016 Case, Dkt. 43, that Descoteaux admitted during the plea colloquy, Dkt. 7-1 at 17. "[S]tatements at the plea colloquy carry a strong presumption of truth." *Muth v. Fondren*, 676 F.3d 815, 821 (9th Cir. 2012), *as amended* (May 31, 2012) (citing *Allison*, 431 U.S. at 73–74 ("[T]he representations of the defendant [at a plea hearing] . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."); *United States v. Morrison*, 113 F.3d 1020, 1021 (9th Cir. 1997) ("Any attempt to contradict the factual basis of a valid plea must fail."); *United States v. Anderson*, 993 F.2d 1435, 1438 (9th Cir. 1993) ("Statements made by a criminal defendant contemporaneously with his plea should be accorded great weight because solemn declarations made in open court carry a strong presumption of verity.") (internal quotations and brackets omitted)).

The Ninth Circuit has expressed agreement with other circuits holding that a petitioner's collateral challenge resting on allegations that directly contradict the petitioner's plea statements ordinarily must fail. *Muth*, 676 F.3d at 821–822 (citations omitted); *see also United States v. Lemaster*, 403 F.3d 216, 220–21 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false."). In this case, the Court conducted a plea colloquy pursuant to Rule 11 where Descoteaux affirmed the

truth of the facts in the plea agreement. Dkt. 7-1 at 2–27; *see also* 2016 Case, Dkt. 42.

Therefore, the Court presumes the facts in the plea agreement are true absent an

extraordinary reason explaining a contradiction of those facts on collateral attack.

Item seven and item eight refer to Descoteaux's acknowledgements of guilt at

sentencing via letter and via allocution. Descoteaux alleges that Hester advised him to

accept responsibility at sentencing, which he did because Hester had also misadvised him

about the likelihood of suppressing the confession and whether to accept the plea after

allegedly being aware of (1) the circumstances of the confession and (2) his claims of

actual innocence. Dkt. 1 at 4–5, 11, 13–14. Like the confession, the Court will not

consider either of Descoteaux's acknowledgements of guilt at sentencing because the

motion attributes error to them based on the ineffective assistance of counsel.

In sum, items one, four, five, seven, and eight will not be considered for the

reasons stated above. The Court finds that the recorded admissions, items two and three,

together establish that Descoteaux committed at least one act of sexual abuse against MV

and are strong circumstantial evidence corroborating Descoteaux's guilt as indicated by

the statement of facts in the plea agreement. However, the Court is unable to rely on the

admissions to conclusively establish the conduct elements of each of the charged offenses

because the admissions are vague. Moreover, although courts differ over whether venue

can accurately be described as an element of an offense, the admissions provide no

evidence of Descoteaux's location. This leaves item six—the statement of facts in the

plea agreement. The Court should presume the truth of those sworn admissions unless

Descoteaux presents extraordinary reasons explaining his motion's contradiction with them.

In *Muth*, the petitioner "offer[ed] no explanation for the contradiction between his statements at the plea colloquy and his current claim . . . ." 676 F.3d at 822. In *Lemaster*, a petitioner in the Fourth Circuit alleged that counsel failed to inform him about changes in the plea agreement and the potential punishment he faced under the plea agreement. 403 F.3d at 222. The petitioner also alleged that he was threatened that he would be denied adequate medical care unless he pled guilty. *Id.* The Fourth Circuit affirmed the district court's summary dismissal of petitioner's motion because his statements during the Rule 11 colloquy expressly belied each of his claims, and he "point[ed] to no other extraordinary circumstance that would entitle him to an evidentiary hearing." *Id.* at 222–23. Conversely, Descoteaux attributes the factual contradiction between his admissions in the plea and the motion to Hester's ineffective advice regarding whether to plead guilty despite (1) Hester's alleged awareness of Agent Stearns's extraction of his confession at gunpoint and (2) his claims of actual innocence. While the Court observes that this post-hoc explanation is improbable and likely incredible, that does not preclude a conclusion that, if true, the facts alleged in the motion present an extraordinary explanation for the factual contradiction between the plea agreement and the collateral attack. Moreover, unlike the petitioner's claims relating to counsel's *explanation* of the plea agreement and its attendant consequences in *Lemaster*, which were foreclosed by the court's record of the Rule 11 plea colloquy, Descoteaux's claims here rely on his attorney's decision to advise him to plead guilty in light of the alleged extra-record circumstances of the

confession. Finally, Descoteaux attributes error to his Rule 11 admissions by asserting that he would not have agreed to the plea agreement facts but for the allegedly incompetent advice he received regarding the viability of suppressing a confession obtained at gunpoint. The Court therefore concludes that neither the admissions nor the admitted plea agreement facts establish that Descoteaux committed the charged offenses sufficient to demonstrate a lack of prejudice on the motion.

Courts should hold a hearing on a § 2255 motion unless the motion, files, and underlying records of the case "conclusively show" that the petitioner is entitled to no relief. 28 U.S.C. § 2255(b). In this case, Descoteaux's motion relies on extra-record factual allegations that directly contradict, but are not foreclosed by, the factual circumstances in the Court's record. The off-record events are the conditions of the confession and Hester's advice regarding suppression and whether to enter a plea given his alleged knowledge of the factual events described by the motion. The fact of Descoteaux's abuse of MV as stated in the plea agreement and the fact of the false confession as alleged in the motion are mutually exclusive; both cannot be true. Consequently, the merits of the motion hinge on the veracity of its factual allegations and the credibility of its author.

In rare instances, credibility may be determined without an evidentiary hearing when it is possible to "conclusively" decide the credibility question based on "documentary testimony and evidence" in the record. *Watts v. United States*, 841 F.2d 275, 277 (9th Cir. 1988) (finding an evidentiary hearing unnecessary in a § 2255 case where district court determined credibility by weighing petitioner's habeas allegations

against statements made by petitioner in post-judgment pleadings) *distinguished by Earp v. Ornoski*, 431 F.3d 1158 (9th Cir. 2005). Here, the Court is tasked with weighing the credibility of the allegations in the motion against, as the Government argues, "the victim's credible allegations," Dkt. 7 at 18, and the evidentiary items the Court considered as described above. Although the recorded admissions strongly suggest that Descoteux sexually abused MV on multiple occasions, the Court has found that the recorded admissions, alone, are insufficient to establish the charged offenses as explained above. And, as the motion provides an improbable yet extraordinary reason—a confession obtained at gunpoint—for its factual contradiction to the plea agreement challenged by the motion, the Court does not rely on Descoteaux's admissions during the Rule 11 colloquy either. Ultimately, the fact that the motion attributes Descoteaux's admissions of guilt at the plea and sentencing hearings to specific allegations of attorney error that are unrebutted by the current record is enough to persuade the Court that this is not one of the "rare" cases where credibility can be resolved without an evidentiary hearing. Said another way, the Court requires an evidentiary hearing to determine the veracity of factual allegations that are outside the record because the current record does not "conclusively" foreclose them. *Machibroada*, 368 U.S. at 494–96 (1962) (evidentiary hearing required where the issues raised relate primarily to purported occurrences outside the courtroom); *see also Bauman*, 692 F.2d at 571 ("a hearing is mandatory whenever the record does not affirmatively manifest the factual or legal individuality of the petitioner's claims."). An evidentiary hearing would also benefit the Court in resolving the motion on credibility grounds. At a hearing, for example, the undersigned would hear testimony

from Descoteaux, Hester, and/or FBI Agent Stearns. With live testimony from relevant witnesses the Court may test Descoteaux's story, gauge the witnesses' demeanor in open court, and ultimately determine the veracity of the factual allegations supporting ground one and ground three in the motion. Therefore, the Court grants an evidentiary hearing on ground one and ground three and reserves ruling on the merits of those grounds.

### 2.      Ground Two and Ground Four

Descoteaux's remaining claims challenge (1) the sufficiency of the factual basis for the plea and (2) Hester's representation or lack thereof after sentencing. Dkt. 1 at 7–10, 16–17.

### a.      Sufficiency of Factual Basis for Plea (Ground Two)

In ground two, Descoteaux asserts that his conviction must be set aside because the Court's alleged error in "fail[ing] to find a factual basis to support the guilty plea." Dkt. 1 at 7. Rule 11 provides that "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). The Supreme Court has held that a district judge satisfies the requirements of Rule 11(b)(3) when the judge determines "that the conduct which the defendant admits constitutes the offense charged . . . ." *McCarthy v. United States*, 394 U.S. 459, 467 (1969) (quoting advisory committee note to Rule 11).

In this case, Descoteaux makes no credible argument that the facts he admitted to in paragraph six of the plea agreement fail to constitute the elements of the charged offenses. Instead, he contends that the Court failed to find a factual basis for the plea because he "could not and did not admit to a single fact concerning his guilt at the change

of plea hearing, depending completely on the coerced statement ilicited [sic] by the FBI."

Dkt. 1 at 7. This argument is meritless. The stipulated statement of facts, which

Descoteaux admitted were true and accurate under oath in open court, Dkt. 7-1 at 17,

allowed the Court to find an independent basis in fact to render judgment on the plea. For

example, Descoteaux's admission that he made contact with MV's vulva both digitally

and orally on more than one occasion for the purpose of his sexual gratification provided

a clear factual basis for the Court to conclude that the elements of the charged offenses

had been established. *See id.* at 15–17. Moreover, the fact that Descoteaux now

challenges the plea agreement's factual admissions does not prevent the Court from

relying on those sworn admissions as a basis *for the Court* to enter judgment on the plea

pursuant to Fed. R. Crim. P. 11(b)(3). Therefore, Descoteaux's claim that the Court failed

to establish a sufficient factual basis to support the guilty plea (ground two) is denied.

### b.    Lack of Post-Sentencing Counsel (Ground Four)

Descoteaux contends that he was denied counsel at a critical stage of the

proceeding because Hester "refused to provide any meaningful advice after sentencing."

Dkt. 1 at 16–17. The Government counters that Descoteaux has failed to establish that

Hester refused a "direct and unambiguous order" to file an appeal, which it asserts is

dispositive to this ground. Dkt. 7 at 18 (citing *United States v. Sandoval-Lopez*, 409 F.3d

1193, 1198 (9th Cir. 2005)). In reply, Descoteaux cites *Roe v. Flores-Ortega*, 528 U.S.

470, 480 (2000) ("*Flores-Ortega*"), in support of his position. Dkt. 14 at 3. *Flores-Ortega*

provides in pertinent part:

> Counsel has a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

528 U.S. at 480. In considering whether counsel has a duty to consult with his client about an appeal, "a highly relevant factor . . . will be whether the conviction follows a trial or a guilty plea, both because a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings." *Id.* The court should also consider factors related to the plea, such as "whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights." *Id.*

Applying *Flores-Ortega*, the Court concludes that Descoteaux has not established that Hester had a duty to consult with him about an appeal, and therefore Hester was not ineffective on that basis. Under the first prong of the test, the Court finds that there was no reason for Hester to think that a rational defendant would want an appeal. After all, the Court imposed a sentence that was the subject of a bargained for plea agreement containing a complete waiver of appeal. 2016 Case, Dkts. 43, 57. Moreover, Hester had no reason to think Descoteaux wanted to appeal even if the facts Descoteaux alleges regarding the confession are true because the confession occurred well before Descoteaux affirmed his wish to plead guilty to the charged offenses in open court. Last, the Court clearly notified Descoteaux at the sentencing hearing that he had waived his right to appeal when it imposed a sentence within the guideline range. Therefore, Hester had no reason to believe that a rational defendant in Descoteaux's shoes would desire an appeal.

Second, Descoteaux fails to establish that he "reasonably demonstrated to [Hester] that he was interested in appealing" the sentence. *See, e.g.*, Dkt. 1 at 16–17; *see also Flores-Ortega*, 528 U.S. at 480. For example, the motion fails to make a factual allegation that Descoteaux communicated his alleged interest in appealing to Hester after the sentence was imposed. Dkt. 1 at 16–17. "Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief." *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (citing *Boehme v. Maxwell*, 423 F.2d 1056, 1058 (9th Cir. 1970)). Because Descoteaux makes no factual allegation that would support a finding that he reasonably demonstrated his interest in taking an appeal to Hester, the Court concludes that Hester did not commit unprofessional errors by failing to do so. Accordingly, Descoteaux's claim that he was denied counsel during a critical stage of the proceeding (ground four) is denied.[8]

### C.    Remaining Issues

First, Descoteaux asserts a new claim based on ineffective assistance of counsel in reply—specifically, that counsel incorrectly advised him the Government would have two opportunities to avoid suppression of the evidence: one in Washington and one in Louisiana. Dkt. 14 at 1. In other words, Descoteaux alleges ineffectiveness because "counsel did not comprehend, or chose not to explain, the concepts of issue preclusion or

---

[8] To the extent that Descoteaux argues that the Court's brief mention of the high recidivism rates for sex offenses imposed a duty on Hester to appeal a sentence "based on clearly erroneous information," Dkt. 1 at 17, he fails to provide authority supporting this proposition. Nor does he establish that this alleged error by the Court would require Hester to appeal on his behalf. Therefore, Descoteaux fails to convince the Court that Hester had a duty to consult with him after sentencing, and Hester was not ineffective on that basis.

claim preclusion." *Id.* A habeas petitioner, however, may not raise a claim for the first time in a reply brief. *See, e.g.*, *Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994). Accordingly, the Court declines to consider the new claim raised for the first time in reply.

Second, the Court has concluded that an evidentiary hearing is required in order to resolve credibility issues presented by ground one and ground three. Therefore, the Court appoints counsel for Descoteaux. *See* Rule 8(c) of the Rules Governing Section § 2255 Cases for the United States District Courts.

Third, in a motion to expand the record Descoteaux contends that a declaration from his stepmother, Ramona Descoteaux, supporting his claim of actual innocence should be "readily admitted under Federal Rule of Civil Procedure 15(c)(2), Rule 15(d), or this Court's broad powers under § 2255's Rule 7 [sic] to expand the record." Dkt. 15 at 1. The Government responds that if the Court grants the motion, it should also expand the record to include a transcript of a recorded phone call between Descoteaux and Morin, a transcript that is already excerpted in the record at 2016 Case, Dkt. 14-3 at 12– 13 and which forms part of the basis of the recorded admissions the Court has discussed extensively above. Because this case will proceed to a hearing where the Court will determine the merits of the motion on credibility grounds, the Court grants both motions to expand the record. Rule 7 of the Rules Governing Section § 2255 Cases for the United States District Courts. The record will therefore be supplemented with the declaration of Ramona Descoteaux, Dkt. 15 at 4–6, and the transcript of the telephone call between Descoteaux and Morin, Dkt. 16-1.

# III.  ORDER

Therefore, it is hereby **ORDERED** that Descoteaux's motion to vacate, set aside, or correct sentence, Dkt. 1, is **DENIED in part** and **GRANTED in part** with ruling **RESERVED** as stated herein. Descoteaux's motion to expand the record, Dkt. 15, and the Government's cross-motion to expand the record, Dkt. 16, are **GRANTED.**

The Court **APPOINTS** counsel for Descoteaux. After counsel has appeared, the parties shall consult and provide a status report with potential dates for an evidentiary hearing by December 4, 2019.

Dated this 22nd day of November, 2019.

BENJAMIN H. SETTLE
United States District Judge